**JAMES HAWKINS APLC**
James R. Hawkins, Esq. (#192925)
Gregory Mauro, Esq. (#222239)
Michael Calvo, Esq. (#314986)
9880 Research Drive, Suite 200
Irvine, CA 92618
Tel.: (949) 387-7200
Fax: (949) 387-6676
Email: James@jameshawkinsaplc.com
Email: Greg@jameshawkinsaplc.com
Email: Michael@jameshawkinsaplc.com

**FALAKASSA LAW, P.C.**
Joshua S. Falakassa, Esq. (Bar No. 295045)
*josh@falakassalaw.com*
1901 Avenue of the Stars, Suite 450
Los Angeles, California 90067
Tel: (818) 456-6168; Fax: (888) 505-0868

**BOKHOUR LAW GROUP, P.C.**
Mehrdad Bokhour, Esq. (Bar No. 285256)
*mehrdad@bokhourlaw.com*
1901 Avenue of the Stars, Suite 450
Los Angeles, California 90067
Tel: (310) 975-1493; Fax: (310) 675-0861

Attorneys for Plaintiffs and the Putative Classes

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUINCY GRIFFIN PERKINS, JOSE JOHNSON, IGNACIO PARKS, AND TIWAN JOHNSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HADCO METAL TRADING SANTA FE SPRINGS CA dba RYDER INTEGRATED LOGISTICS INC.: and DOES 1-50, inclusive,<br><br>Defendants. | **Lead Case No.** 3:23-cv-00502-WHO [Consolidated for all purposes with Case No. 3:23-cv-01694-WHO & Case No. 4:22-cv-07456-JST]<br><br>[Assigned to the Honorable William H. Orrick]<br><br>**FRCP RULE 23 CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT AND ATTORNEY FEES AND COSTS**<br><br>Date: December 10, 2024<br>Time: 10:30 a.m. |

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 1

I.      INTRODUCTION ........................................................................ 1

II.     PROCEDURAL HISTORY AND INVESTIGATION OF CLAIMS .......... 2

III.    DEFENDANTS' CONTENTIONS AND AFFIRMATIVE DEFENSES .... 7

IV.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE...... 10

     a. The Settlement Satisfies the Standard for Final Approval ……………...10
     b. Preliminary Approval…………………………………………………...11
     c. Class Notice Has Been Effectuated and Comports with Rule 23 and Due Process……………………………………………………………….……11
     d. The Settlement is Entitled to the Presumption of Fairness……………..12

V.      THE COURT SHOULD APPROVE THE REQUESTED FEES AND COSTS ................................................................................... 14

     a. The Results Achieved Were Substantial…………………………………16
     b. The Risk of Litigation Was Significant
     c. The Contingent Nature of the Fee and the Financial Burden Carried by the Plaintiffs Justifies the Request ...................................................... 18

     d. Awards Made in Similar Cases…………………………………………19
     e. Costs of Litigation are Reasonable……………………………………...21

VI.     THE ENHANCEMENT PAYMENT IS REASONABLE ........................ 22

VII.    THE SETTLEMENT ADMINISTRATION COSTS ARE REASONABLE ................................................................................... 23

VIII.   THE SETTLEMENT PENALTIES UNDER PAGA ARE REASONABLE ................................................................................... 23

IX.     CONCLUSION.......................................................................... 24

1

## TABLE OF AUTHORITIES

2

*Bebchick v. Wash. Metro. Area Transit Comm'n*,
   805 F.2d 396 (D.C.Cir.1986)……………………………………………19

*Bell v. Farmers Ins. Exch*.
    (2004) 115 Cal. App. 4th 715……………………………………………22

*Betancourt v. Advantage Human Resourcing, Inc.,*
   2016 WL 344532 at * 9 (N.D. Cal. 2016)……………………………....15

*Bowles v. Dep't of Ret. Sys.,*
   847 P.2d 440 (Wash. 1993)……………………………………………15

*Boyd v. Bechtel Corp.,*
   485 F. Supp. 610 (N.D. Cal. 1979)……………………………………13

*Brown v. American Honda Motor Co., Inc.,*
   2010 U.S. Dist. Lexis 145475, at *49 (C.D. Cal. July 29, 2010)………….13

*Chavez v. Netflix, Inc*.
    162 Cal. App. 4th 43, 66 n.11 (2008)……………………………..…15

*D'Aria v. Glass,*
   130 S. Ct. 797 (2009)..……………………………………………...17

*Evans v. Glass,*
   130 S. Ct. 801 (2009)..……………………………………………...17

*Garner v. State Farm Auto Ins. Co.,*
   No. CV 08 1365 CW (EMC), 2010 U.S. Dist. Lexis 49477……………..10

*Glass v. UBS Financial Services, Inc*.,
   2007 WL 221862, *16 (N.D. Cal. 2007)…………………………..…16,17

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998)……………………………………10

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir.1994)……………………………………..…..21

*Hensley v. Eckerhart,*
   461 U.S. 424, (1983)………………………………………………16

*In re Bluetooth Headset Prods. Liab. Lit.,*
    654 F.3d 935 (9th Cir. 2011)…………………………………..…14,16

*In re Cellphone Fee Termination Cases*
    (2010) 186 Cal. App. 4th 1380……………………………………22

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFF'S MOTION FOR
FINAL APPROVAL

*In re: Omnivision Techs.*,
    559 F. Supp.2d, 1036 (N.D. Cal. 2007)………………………………………13

*In re Pac. Enterprises Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995)…………………………………………………17

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994)………………………………………………18

*Knight v. Red Door Salons, Inc.*,
    2009 WL 248367 at *5–6 (N.D. Cal. 2009)………………………………15

*Laffitte v. Robert Half Internat., Inc.*,
    1 Cal. 5th 480 (2016)…………………………………….……………..…15

*Martin v. AmeriPride Servcs.*,
    2011 U.S. Dist. Lexis 61796 at *21 (S.D. Cal. June 9, 2011)……….…..…13

*McCown v. City of Fontana*,
    565 F.3d 1097 (9th Cir. 2009) )…………………………………..…..16

*Mullane v. Central Hanover Bank and Trust Co.*,
    339 U.S. 306 (1950)..……………………………………………….10,12

*Murillo v. Pac. Gas & Elec. Co.*,
    266 F.R.D. 468 (E.D. Cal. 2010)..……………………………………10

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d at 625)…………………………………………..……….10

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009………………………………...…10,12,13

*Romero v. Producers Dairy Foods, Inc.*,
    2007 WL 3492841 at *4 (E.D. Cal. 2007) …………………..…………15

*Saulic v. Symantec Corp.*,
    596 F. Supp.2d 1323 (C.D. Cal. 2009)…………………………………12

*Singer v. Becton Dickinson & Co.*,
    08-CV-821-IEG (BLM), 2010 WL 2196104 at *8 (S.D. Cal. June 1, 2010)..14

Six (6) Mexican Workers,
    904 F.2d at 1311…………………….…………………………..……….19

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir.1993)……………………………………………19

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002)……………………………………..passim

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFF'S MOTION FOR
FINAL APPROVAL

*Wren v. RGIS Inventory Specialists,*
    2011 WL 1230826 at *29 (N.D. Cal. 2011)…………………………………15

## **STATE STATUES**

Business & Professions Code Sections 17200 et seq.,……………………..…3
California Civil Code §§ 1785 et seq.........………………………………........3
California Civil Code §§ 1786 et seq.........………………………………...…....3

## **FEDERAL RULES**

Rule 23.........………………………………….........................................10,11,12,13
Rule 23(e).........…………………………….........................................................10

## **SECONDARY SOURCES**

Alba Conte & Herbert Newberg, *4 Newberg on Class Actions* (5th ed. 2014)....11
"Newberg" §§ 13:39, *et seq*……………………………………………….1

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFF'S MOTION FOR
FINAL APPROVAL

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs Quincy Griffin Perkins, Jose Johnson, Ignacio Parks, and Tiwan Johnson (collectively, "Plaintiffs"), individually and on behalf of the Conditionally Certified Class, moves for final approval of a $2,950,000.00 non-reversionary, Gross Settlement Amount ("GSA") memorialized in the Parties' Class Action and PAGA Settlement Agreement ("Settlement, "Settlement Agreement" or "S.A.") [1], which after deductions for attorneys' fees and costs, the Class Representative Enhancement Award Payments, Administration fees, and the payment to the LWDA, will provide an estimated Net Class Settlement Amount ("NSA") of $1,745,425.29 as follows:

|  | Total Amount |
|---|---|
| *Gross Settlement Amount* | $2,950,000.00 |
| Attorneys' Fees (35 percent of GSA) | $983,333.33 |
| Litigation Costs (Not to Exceed) | $37,491.38 |
| Administrator Costs (Not to Exceed) | $63,750.00 |
| PAGA Fund | $60,000.00 |
| Class Representative's Service Award | $60,000.00 |
| *Net Class Settlement Amount* | **$1,745,425.29** |

The NSA will be distributed to 5,405 Participating Class Members defined as: All current and former hourly-paid or non-exempt employees of Ryder Transportation Solutions, LLC and/or Ryder Integrated Logistics, Inc. employed in California at any time during the Class Period (*i.e.*, October 17, 2018 through January 24, 2024).[2]

The Settlement was preliminarily approved on July 26, 2024. Dkt. # 66. On

---

[1] A true and correct copy of the Settlement Agreement is attached to the Declaration of Mehrdad Bokhour In Support of Final Approval ("Bokhour Decl."), and First and Second Amendments Thereto as **Exhibit A**.

[2] Bokhour Decl., Ex. A at ¶ 3; Declaration of James Hawkins In Support of Final Approval ("Hawkins Decl.,") ¶ 37; Declaration of Nathalie Hernandez on behalf of ILYM Group, Inc., ("Hernandez Decl.") ¶ 4.

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFFS' MOTION FOR FINAL APPROVAL

September 9, 2024 the Court-approved Notice Packet (consisting of the Notice of Class Action and PAGA Settlement, Change of Address form, and pre-printed return envelope) was sent to Class Members informing them of their rights and benefits under the Settlement, including their estimated Settlement Payments if they did not request exclusion, and the October 24, 2024 deadline to dispute workweeks, request exclusion, or object to the Settlement. (Hernandez Decl. ¶¶ 11-12).

Support for the Settlement is strong. Two (2) Class Members requested exclusion to opt out of the Settlement and Zero (0) Class Members objected to the Settlement. (*Id.* at ¶¶ 11-12). The proposed Settlement will pay Participating Class Members based on the number of workweeks worked during the Class Period, paying Participating Class Members on average $322.93 and highest payments of $1,411.78. PAGA Employees who worked during the PAGA Period will also receive a proportional share of the Net PAGA Settlement Amount paying on average $2.78 and highest PAGA Payment Share estimated at $11.86. (*Id.* at ¶ 14).

Therefore, Plaintiffs respectfully request the Court grant final approval of the Settlement, attorneys' fees, litigation costs, Service Award Payments, Settlement Administration Costs, and payment to the LWDA in the amounts preliminarily approved by the Court and as fully disclosed to Class Members.

## II.    PROCEDURAL HISTORY AND INVESTIGATION OF CLAIMS

On October 14, 2022, counsel for Plaintiffs Jose Johnson and Ignacio Parks sent a notice of alleged Labor Code violations purportedly caused by RTS to the LWDA. (Bokhour Decl., ISO Prelim Appr., Dkt. 47-5, ¶11).[3]

On October 17, 2022, Plaintiffs Jose Johnson and Ignacio Parks filed a Complaint in the Superior Court of the State of California for the County of

---

[3] Hawkins Decl., ¶ 2.

Alameda against RTS, entitled *Jose Johnson et al. v. Ryder Transportation Solutions, LLC*, Alameda County Superior Court No. 22CV019819 ("*Johnson* Action"), alleging six (6) causes of action for: (1) minimum wage violations, (2) failure to pay wages timely during employment, (3) failure to indemnify all necessary business expenses, (4) wage statement violations, (5) waiting time penalties, and (6) unfair competition. (*Id.*)[4]

On November 14, 2022, Plaintiff Quincy Griffin Perkins filed a Complaint in the Superior Court of the State of California for the County of Alameda against RIL, entitled *Quincy Griffin Perkins v. Hadco Metal Trading Santa Fe Springs CA dba Ryder Integrated Logistics Inc.*, Alameda County Superior Court No. 22CV021674 ("*Perkins I*"). In *Perkins I*, Plaintiff Quincy Griffin Perkins alleged twelve (12) causes of action against RIL for: (1) failure to pay wages including overtime, (2) failure to provide meal periods, (3) failure to provide rest periods, (4) failure to timely pay wages, (5) failure to provide accurate itemized wage statements, (6) failure to indemnify necessary business expenses, (7) violation of California's unfair competition laws, Business & Professions Code Sections 17200 *et seq.*, (8) improper use of consumer credit report, (9) violation of the Fair Credit Reporting Act for failure to make proper disclosures, (10) violation of the Fair Credit Reporting Act for failure to obtain authorization, (11) failure to make proper disclosure and obtain authorization (California Civil Code §§ 1786 *et seq.*), and (12) failure to make proper disclosure (California Civil Code §§ 1785 *et seq.*). Plaintiff Quincy Griffin Perkins erroneously named Defendant RIL as "Hadco Metal Trading Santa Fe Springs CA dba Ryder Integrated Logistics, Inc." On that same day, Perkins' counsel sent a notice of alleged Labor Code violations purportedly caused by RIL to the LWDA. (*Id.*)[5]

On November 23, 2022, RTS removed the *Johnson* Action to the United

---

[4] Hawkins Decl., ¶ 3.
[5] Hawkins Decl., ¶ 4.

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFF'S MOTION FOR FINAL APPROVAL

States District Court of the Northern District of California where it was assigned Case No. 3:22-cv-07456. (*Id.*).[6]

On January 19, 2023, Plaintiff Quincy Griffin Perkins filed a separate action alleging one claim under PAGA against RIL, entitled *Quincy Griffin Perkins v. Hadco Metal Trading Santa Fe Springs CA dba Ryder Integrated Logistics Inc.*, Alameda County Superior Court No. 23CV025921 ("*Perkins II*"). Plaintiff Quincy Griffin Perkins again erroneously named Defendant RIL as "Hadco Metal Trading Santa Fe Springs CA dba Ryder Integrated Logistics, Inc." (*Id.*).[7]

On February 2, 2023, RIL removed *Perkins I* to the United States District Court of the Northern District of California where it was assigned Case No. 3:23-cv-00502. (*Id.*).[8]

On March 22, 2023, the parties to the *Johnson* Action filed a Joint Stipulation for Leave to File a First Amended Complaint. The stipulation attached the proposed First Amended Complaint which added a separate cause of action for penalties under California's Private Attorneys General Act (PAGA), and stated that the First Amended Complaint would be deemed filed as of the date the court approved the stipulation. On March 23, 2023, the court issued an order granting the parties' stipulated request to file the First Amended Complaint. (*Id.*).[9]

On April 7, 2023, RIL removed *Perkins II* to the United States District Court of the Northern District of California, where it was initially assigned Case No. 4:23-cv-01694 and then later Case No. 3:23-cv-01694-WHO. (*Id.*).[10]

On May 4, 2023, the parties to *Perkins II* filed a Joint Stipulation to Transfer and Consolidate the action with *Perkins I*. On May 10, 2023, the presiding judge over *Perkins II* granted the stipulation, and the case was consolidated with *Perkins*

---

[6] Hawkins Decl., ¶ 5
[7] Hawkins Decl., ¶ 6
[8] Hawkins Decl., ¶ 7
[9] Hawkins Decl., ¶ 8
[10] Hawkins Decl.,¶ 9

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFF'S MOTION FOR FINAL APPROVAL

*I* with 3:23-cv-01694-WHO as the lead case caption. (*Id.*).[11]

On October 12, 2023, counsel for Plaintiffs Jose Johnson and Ignacio Parks sent a letter to RIL on behalf of former RIL employee Tiwan Johnson, advising that they represented his interests and requesting various employment records on his behalf. (*Id.*). [12]

On December 8, 2023, Plaintiffs filed a First Amended Consolidated Class and PAGA Action Complaint, consolidating the *Perkins* Actions with the *Johnson* Action.  On December 21, 2023, Plaintiffs filed a Second Amended Consolidated Class and PAGA Action Complaint.  The Plaintiffs in the First and Second Amended Consolidated Class and PAGA Action Complaint are Jose Johnson, Ignacio Parks, Quincy Griffin Perkins, and Tiwan Johnson, and the Defendants are RIL and RTS.  Plaintiffs alleged the following causes of action in the Second Amended Consolidated Class and PAGA Action Complaint: (1) failure to pay wages including overtime and minimum wages, (2) failure to provide meal periods, (3) failure to provide rest periods, (4) failure to timely pay wages, (5) failure to provide accurate itemized wage statements, (6) failure to indemnify necessary business expenses, (7) violation of Business & Professions Code Section 17200, *et seq.*, and (8) PAGA penalties. (*Id.*).[13]

On November 22, 2023, Plaintiffs Jose Johnson, Ignacio Parks, Quincy Griffin Perkins, and Tiwan Johnson sent an amended notice of alleged Labor Code violations to the LWDA.  On January 30, 2024, Plaintiffs Jose Johnson, Ignacio Parks, Quincy Griffin Perkins, and Tiwan Johnson sent a further amended notice of alleged Labor Code violations to the LWDA. (*Id.*).[14]

Shortly after removal, Plaintiffs served written discovery on Defendants, including special interrogatories with a demand for the class contact information,

---

[11] Hawkins Decl., ¶ 10
[12] Hawkins Decl., ¶ 11
[13] Hawkins Decl., ¶ 12
[14] Hawkins Decl., ¶ 13

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFF'S MOTION FOR FINAL APPROVAL

and requests for production of documents.  (*Id.* at ¶ 12).[15]

In preparation for the Rule 26 conference, the Parties engaged in a series of meet and confers regarding the merits of the claims and defenses, the scope of class discovery, briefing schedules and other matters.  After the Rule 26 conference, the Parties engaged in an exchange of discovery in preparation for class certification, including exchanging initial disclosures, written discovery, and Defendants produced hundreds of documents relating to applicable policies, class claims, pay structures, and related matters.  After receiving the documents, Plaintiffs discovered an alternative unpaid-wage theory relating to Defendants' alleged unlawful Alternative Workweek Schedule practice and alleged failure to correctly pay overtime and sick pay wages, and promptly filed a First Amended Complaint to incorporate these theories.  (Dkt. 26). (*Id.*).[16]

As discovery continued, the Parties discussed scheduling various depositions, including those of the Plaintiffs, various employees, and fact witnesses. Plaintiffs' counsel interviewed numerous Class Members and was prepared to obtain declarations/depositions for a class certification motion (*Id.* at ¶ 13).[17]

Although Defendants fully denied, and continue to deny, the factual and legal allegations in this case and believe they have valid defenses to Plaintiffs' claims, the Parties agreed to submit the matter to mediation before expending substantial time and fees on discovery disputes and the class certification process. In preparation for mediation, the Parties engaged in an extensive informal discovery process where information, correspondence, documents, and legal analysis were exchanged, including procedures, payroll, and timekeeping

---

[15] Hawkins Decl., ¶ 14
[16] Hawkins Decl., ¶ 15
[17] Hawkins Decl., ¶ 16

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFF'S MOTION FOR FINAL APPROVAL

records, and evidence relating to the class size.  Defendants also provided Plaintiffs with a significant sampling of timekeeping and payroll records amounting to nearly 100,000 shifts worked.  The informal exchange enabled Plaintiffs to look deeply into the validity of the claims and Defendants' defenses, enabling Plaintiffs and their counsel to analyze, research, and investigate the potential claims of all similarly situated employees.  (*Id.* at ¶ 14).[18]

On October 24, 2023, Plaintiffs and Defendants engaged in mediation before Mr. Antonio Piazza, Esq., an experienced mediator in this area of law. The mediation was successful and a global settlement in principle was reached and the Parties entered into a Memorandum of Understanding.  Thereafter, the Parties memorialized the terms of the settlement in a long-form Settlement Agreement which was negotiated following the mediation. (*Id.* at ¶ 15).[19]

## III.    DEFENDANTS' CONTENTIONS AND AFFIRMATIVE DEFENSES

Plaintiffs were employed by Defendants as truck drivers, warehouse associates, and material handlers. Plaintiffs contend that Defendants' non-exempt California employees have all been governed by the same basic compensation plans and policies governing wage payment, meal/rest breaks, sick pay, and bonus plans, which Defendants dispute. (*Id.* at ¶ 16).[20]

Plaintiffs' operative Complaint alleges various violations of the California Labor Code.  For instance, Plaintiffs alleges that, at all relevant times, Defendants employed a uniform timekeeping policy and practice that failed to account for all time work by Plaintiffs and other truck driver, warehouse associates, and material handler employees.  However, Defendants vehemently opposed this claim, arguing that their timekeeping policy complied with

---

[18] Hawkins Decl., ¶ 17
[19] Hawkins Decl., ¶ 18
[20] Hawkins Decl., ¶ 19

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFF'S MOTION FOR FINAL APPROVAL

California law and exhaustive compliance practices, including but not limited to timekeeper acknowledgment forms to confirm that all hours worked were recorded or, if there was an error on the timesheet, required to fill out a timesheet edit form. (*Id.* at ¶ 17).[21]

Additionally, Plaintiffs claim that Defendants failed to pay overtime properly and minimum wages were predicated on an off-the-clock theory and regular rate theory, as well as sick pay wages due to the failure to include all earned compensation in the calculation for the regular rate of pay. Defendants deny this claim because any regular rate calculations were accurate and the bonuses paid to the Class Members were allegedly discretionary in nature and, therefore, need not be included in the calculations for overtime compensation. (*Id.* at ¶ 18).[22]

Defendants denied these claims on grounds that their policies prohibit off-the-clock work, and further provide an avenue for employees to report any off-the-clock given that all hours worked must be recorded. Plaintiffs also alleged that Defendants failed to implement an Alternative Workweek Schedule and thus failed to pay all overtime wages owed. (*Id.* at ¶ 19).[23]

Plaintiffs also alleged that warehouse associates were often subjected to meal period violations due to late first meals (after the fifth hour of work), short meal periods (less than 30 minutes in length) and no (or late or short) second meal periods for shifts over 10 hours. (*Id.* at ¶ 20).[24] And the same facts that denied Class members the ability to take compliant meal periods also resulted in a failure to provide compliant off-duty rest breaks. Defendants refuted each of these allegations, arguing that the Class Members were provided all mandated

---

[21] Hawkins Decl., ¶ 20
[22] Hawkins Decl., ¶ 21
[23] Hawkins Decl., ¶ 22
[24] Hawkins Decl., ¶ 23

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFF'S MOTION FOR FINAL APPROVAL

breaks pursuant to compliant written policies regarding the provision and timing of meal periods and rest breaks, and procedures that ensured meal and rest period compliance, including weekly timekeeping acknowledgement forms to report any meal or rest period that was not provided and a premium paid. (*Id.* at ¶ 21).[25]

Finally, Plaintiff argued that Defendants failed to pay all wages due and owing to the Class Members upon separation due to the various unpaid wage claims discussed above. Defendants denied that it failed to pay any wages and further argued that any underpayment, if it occurred, was not intentional or willful as required to impose waiting time penalties under Labor Code § 203. (*Id.* at ¶ 22).[26]

Defendants also argued that there are substantive reasons that would prevent certification of the Class. First, in addition to disputing the merits of Plaintiffs' claims, Defendants disputed that Plaintiffs could obtain class certification, arguing a lack of commonality of the legal claims and injuries, lack of ascertainability, lack of superiority, among other arguments. Defendants further argued that they complied with the applicable law and that any purported deviations therefrom were individualized in nature, thereby limiting Plaintiffs' ability to certify the class. While Plaintiffs assert that this is a suitable case for certification, Plaintiffs realize there are significant risk associated with class certification proceedings, which could significantly limit the claims that he could pursue on a class basis. (*Id.* at ¶ 23).[27] Plaintiffs further argued that they and the other PAGA Employees were entitled to civil penalties under PAGA derivative of the afore-referenced claims. (*Id.* at ¶ 24).[28]

In conclusion, each of the claims was vehemently refuted and disputed by

---

[25] Hawkins Decl., ¶ 24
[26] Hawkins Decl., ¶ 25
[27] Hawkins Decl., ¶ 28
[28] Hawkins Decl., ¶ 27

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFF'S MOTION FOR FINAL APPROVAL

Defendants.

## IV.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### a.    The Settlement Satisfies the Standard for Final Approval

A class action may not be settled without court approval. Rule 23(e). To grant final approval to a class action settlement, a district court must find the proposed settlement is fundamentally fair, adequate, and reasonable. *Staton v. Boeing Co.*, 327 F. 938, 952 (9th Cir. 2003).

Although the Court has discretion to determine whether a proposed class settlement is fair, the Ninth Circuit has "long deferred to the private consensual decision of the parties." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)). "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the Settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d at 625. "[T]he Court's function is not to second guess the Settlement's terms." *Garner v. State Farm Auto Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 U.S. Dist. Lexis 49477, *21 (N.D. Cal. Ap. 22, 2010).

Rule 23(e) settlement approval has three steps: (1) preliminary approval of the settlement;(2) notice of the settlement to Class Members; and (3) a final fairness hearing at which Class Members may be heard and at which evidence and argument regarding the settlement may be considered. *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 473 (E.D. Cal. 2010). This procedure safeguards Class Members' due process rights and enables the Court to fulfill its role as a fiduciary, protecting interests of absent class members. See William Rubenstein,

Alba Conte & Herbert Newberg, *4 Newberg on Class Actions* (5th ed. 2014) ("Newberg"), §§ 13:39, *et seq*.

### b. Preliminary Approval

On April 17, 2024 Plaintiffs' Motion for Preliminary Approval was filed and served on the LWDA the same date. The motion was noticed for May 29, 2024 (Dkt. 47). (Hawkins Decl. ¶ 31). On July 26, 2024, the Court issued its Order Granting Plaintiff's Motion for Preliminary Approval and Conditional Certification of the Class, and requiring the Parties to submit a stipulation as to proposed filing dates and a proposed order thereon (Dkt. 66). Having evaluated the terms of the Settlement that provided for direct notice to the Class via First Class U.S. Mail, and a notice plan that included the Administrator's search of the National Change of Address database to update stale addresses prior to the initial mailing of the Notice Packet, and skip-tracing of returned and undelivered Notice Packets using the Class Member's social security number, the Court determined the Settlement's notice plan was reasonably calculated to reach the members of the Class (Dkt. 66). (Hawkins Decl. ¶ 32).

At the time of preliminary approval, the Court was provided with sufficient information to satisfy to grant preliminary approval. Following dissemination of the Notice, and adequate time provided to the Class to object to the Settlement, 0 class members submitted objections and 2 opt outs of the settlement, ***resulting in a 99.96% participation rate from the Class***. (Hernandez Decl., ¶¶ 11-13). Thus, the proposed Settlement is entitled to the presumption that it is fair and in all other respects proper and should be finally approved.

### c. Class Notice Has Been Effectuated and Comports with Rule 23 and Due Process

Before a class action can be finally approved, notice of the Settlement must be provided to the Class. Fed. R. Civ. P. 23(e)(1). Rule 23 requires that the

Class receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice to the Class must be "reasonably calculated under all the circumstances, to apprise interested Parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314 (1950); *Saulic v. Symantec Corp.*, 596 F. Supp.2d 1323, 1327 (C.D. Cal. 2009).

The Court approved the Notice of Class and PAGA Settlement and found that it fairly and adequately advised the Class and PAGA Employees of the terms of the proposed Settlement, the benefits available to them, the Final Approval Hearing date, and the right to appear at the hearing, among other things. Preliminary Approval Order, (Dkt. 66). The Court found that the Notice described the essential terms of the Settlement, defined the class, set forth the procedures for opting out of the Class and filing objections to the proposed Settlement, and provided information on the date, time, and location of the final fairness hearing. These notice methods are reasonably calculated to afford the class members an opportunity to present any objections. *Id.*

### d.  The Settlement is Entitled to the Presumption of Fairness

"[I]n the Ninth Circuit, a court affords a presumption of fairness to a settlement if: '(1) the negotiations occurred at arms' length; (2) there was sufficient discovery; (3) the proponents of the Settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" (cite omitted) *Rodriguez v. West Publishing Corp.*, No. CV-05-3222 R(MCx) 2007 U.S. Dist. LEXIS 74849 at 32-33 (C.D. Cal. Sept. 10, 2007). The Preliminary Approval Motion thoroughly analyzed the terms of the Settlement in light of these factors showing that the proposed Settlement is in the Class's best interest, is adequate and reasonable, and entitled to a presumption of fairness. (Dkt. 66).

In granting preliminary approval, the Court found the first three *Rodriguez* factors satisfied; the fourth factor, the number of objectors, was unknown until the Class had an opportunity to respond to the Notice. Subject only to the Class's reaction, the Court preliminarily presumed the Settlement was fair, adequate and reasonable. (Dkt. 66).

Two (2) Class Member opted-out of the Settlement and zero (0) Class Members objected. (Hernandez Decl., ¶¶ 11-12). This supports the presumption the Settlement is fair, adequate and reasonable. *Martin v. AmeriPride Servcs.*, 2011 U.S. Dist. Lexis 61796 at *21 (S.D. Cal. June 9, 2011); *In re: Omnivision Techs.*, 559 F. Supp.2d, 1036, 1043 (N.D. Cal. 2007) ("[T]he lack of objection of the Class Members favors approval of the Settlement."); see also *Brown v. American Honda Motor Co., Inc.*, 2010 U.S. Dist. Lexis 145475, at *49 (C.D. Cal. July 29, 2010) (a low number of opt-outs indicates class members favor settlement and find it fair); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (a lack of objections supports that the settlement is reasonable).

Nothing has changed since the Court granted preliminary approval of the settlement to negate the presumption of fairness. With the Class's favorable reaction to the Settlement, Class Counsel remains convinced the Settlement is in the Class's best interest based on detailed knowledge of the issues presented and the negotiations. The length and risks of trial and the perils of litigation that affect the value of the claims were all carefully weighed. The affirmative defenses asserted by Defendants, the uncertainty of obtaining and maintaining Rule 23 certification, the prospect of an adverse summary judgment ruling, the difficulties of complex litigation, the lengthy process of establishing damages, and the risks and delays of appeals, were all carefully considered by Class Counsel in arriving at the Settlement. (Hawkins Decl., ¶ 34).

## V.    THE COURT SHOULD APPROVE THE REQUESTED FEES AND COSTS

Class Counsel applies for an award of attorneys' fees in the sum of $983,333.33[29] of the GSA, and litigation costs of $37,491.38 (Hawkins Decl., ¶¶ 39-41, Ex. 1; Bokhour Decl., ¶ 17, Ex. B; Declaration of Joshua Falakassa In Support of Final Approval ("Falakassa Decl.,") ¶ 18, Ex. A).

The Ninth Circuit has identified a number of factors the Court may consider in assessing whether an award is reasonable and whether an upward departure from the standard benchmark is warranted, including: (1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee; (5) the financial burden carried by the plaintiffs; and (6) awards made in similar cases. *Singer v. Becton Dickinson & Co.,* 08-CV-821-IEG (BLM), 2010 WL 2196104 at *8 (S.D. Cal. June 1, 2010) (*citing Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1048-50 (9th Cir. 2002)).

The Ninth Circuit has established "25 percent of the fund as the benchmark for a reasonable fee award" in common fund cases." *In re Bluetooth Headset Prods. Liab. Lit.*, 654 F.3d 935, 942 (9th Cir. 2011); *In Re National Collegiate Athletic Association Grant-in-Aid Cap Antitrust Litigation*, 2017 WL 6040065, *2 (N.D. Cal. 2017) (the 25% benchmark is "presumptively reasonable."). However, despite the fact that the Ninth Circuit has generally established 25% of a common fund as the "benchmark" award for attorney fees, *Vizcaino*, 290 F.3d at 1043, it has also held that benchmark is only the starting point for the analysis and that the exact percentage to be awarded varies based on the facts of the case but that "in most common fund cases, the award exceeds that benchmark." *In Re NCAA*, 2017 WL 6040065 at *2.    Finally, 33.33% percent fee is within the range typically

---

[29] Although the agreement calls for up to 35% recovery of fees i.e. $1,032,500, Counsel for Plaintiffs have agreed to not seek fees greater than 1/3 of the GSA i.e. $983,333.33. (Hawkins Decl., ¶ 36).

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFF'S MOTION FOR FINAL APPROVAL

awarded by California state courts. *See Laffitte v. Robert Half Internat., Inc.*, 1 Cal. 5th 480, 503 (2016) (the California Supreme Court affirmed percentage awards for attorney fees from common funds, and then upheld a 33.33% attorney fee award from the common fund in a wage and hour class action); *see also Chavez v. Netflix, Inc.* 162 Cal. App. 4th 43, 66 n.11 (2008) ("fee awards in class actions average around one-third of the recovery"); *see also, e.g., Betancourt v. Advantage Human Resourcing, Inc.,* 2016 WL 344532 at * 9 (N.D. Cal. 2016) (awarding 34.3% of settlement fund in wage and hour class action); *Wren v. RGIS Inventory Specialists,* 2011 WL 1230826 at *29 (N.D. Cal. 2011) (awarding fees that "amount to just under 42% of the settlement amount" in a wage and hour class action); *Knight v. Red Door Salons, Inc.,* 2009 WL 248367 at *5–6 (N.D. Cal. 2009) (approving of a 30% fee award in a wage and hour class action settlement); *Romero v. Producers Dairy Foods, Inc.,* 2007 WL 3492841 at *4 (E.D. Cal. 2007) (approving a 33% fee award in a wage and hour class action settlement).

Plaintiffs respectfully submit that given that the California Supreme Court declined to adopt a 25% benchmark in *Laffite*, 1 Cal. 5th at 503-06, the 25% benchmark should no longer apply in cases in which California law governs the fee motion. In *Vizcaino*, the lead Ninth Circuit decision adopting the 25% benchmark, both the claims and the fee motion were governed by Washington law, and the Ninth Circuit relied on a Washington Supreme Court decision in which a 25% benchmark was adopted. *Vizcaino*, 290 F.3d at 1047 (*citing Bowles v. Dep't of Ret. Sys.,* 847 P.2d 440, 451 (Wash. 1993)). Thus, after *Laffitte*, there is no reason for the Ninth Circuit to continue to apply this benchmark in cases governed by California law.

In any event, the upward departure from the 25% benchmark is justified here given the skill displayed by counsel in securing an excellent $2,950,000.00

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFF'S MOTION FOR
FINAL APPROVAL

settlement for thousands of employees involving complex issues on a purely contingent basis.

### a.    The Results Achieved Were Substantial

The Supreme Court has said that in an award of attorney's fees the "most critical factor is the degree of success obtained." *Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983).  The "benefit obtained for the class" is considered the "foremost" consideration in determining the appropriate fee in a common fund case. *In Re Bluetooth*, 654 F.3d at 942.  Thus, ultimately the reasonableness of the fee "is determined primarily by reference to the *level of success* achieved by the plaintiff." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (emphasis added).  Indeed, the Ninth Circuit has held that the relevant circumstances that could justify an *upward* departure from the 25 percent benchmark include the achievement of "exceptional results" for the class.   *Glass v. UBS Financial Services, Inc*., 2007 WL 221862, *16 (N.D. Cal. 2007) (italics in original).  Here, the results achieved fully warrant the fee request.

First, Class Counsel recovered a significant aggregate sum on behalf of the Settlement Class Members and through these efforts approximately 5,405  Class Members will receive payment. (Hawkins Decl., ¶ 37).  The Net Settlement Amount remaining for the Individual Settlement Payments is estimated to be $1,745,425.29. (*Id*. at ¶ 36).  The average award is estimated to be $322.93. (Hernandez Decl., ¶ 14).

Class Counsel respectfully submits that this excellent result was only achieved because Class Counsel tenaciously litigated this matter in state and federal court in this dynamic area of wage and hour law. (Hawkins Decl., ¶ 38; Bokhour Decl., ¶ 8-13; Falakassa Decl., ¶¶ 7-15).  All of these efforts ultimately culminated in the instant settlement.  Without this dogged pursuit by Class Counsel and Plaintiffs, and the investment of substantial resources and time, the Settlement

Class may have received nothing. At all times, Defendant mounted factual and legal challenges, and asserted numerous defenses which threatened all recovery, as it argued that it complied with all applicable laws at all times.

In sum, the substantial results achieved in this matter and the superior work to achieve these results supports a 33.33% percent fee. Accordingly, this factor supports approval of counsel's fees.

### b. The Risk of Litigation Was Significant

The risk factor also supports the requested fee percentage. In accepting this case, Class Counsel committed to a long and arduous fight against a sophisticated Defendant with experienced counsel, Reed Smith LLP. Plaintiffs' claims involved complex and disputed legal issues and fact-specific arguments which the Parties litigated heavily since inception of the actions.

Defendant vigorously challenged all aspects of the Action from the inception. Defendant asserted numerous defenses which threatened all recovery, and argued that it complied with all applicable laws at all times. Nevertheless, Class Counsel negotiated this substantial settlement for the Class.

In short, Plaintiffs' counsel proceeded with this litigation under a significant risk of no recovery and with some aspects of their case uncertain. Negotiating a settlement "while the state of the law remain[s] uncertain" is the kind of difficult litigation and assumption of risk that "should be fully rewarded." *Glass v. UBS Fin. Services, Inc.*, C-06-4068 MMC, 2007 WL 221862 at *16 (N.D. Cal. Jan. 26, 2007*) aff'd*, 331 F. App'x 452 (9th Cir. 2009), *cert. denied D'Aria v. Glass,* 130 S. Ct. 797 (2009) and *Evans v. Glass,* 130 S. Ct. 801 (2009).

Class Counsel assumed the risk that they would not be paid and that they would lose all costs and time invested if this case failed. Despite these real and substantial risks, significant monetary relief was secured for the class. This significant risk supports the requested fee award. *See In re Pac. Enterprises Sec.*

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFF'S MOTION FOR FINAL APPROVAL

*Litig.,* 47 F.3d 373, 379 (9th Cir. 1995) (approving 33 1/3% fee award "because of the complexity of the issues and the risks" involved); *Vizcaino*, 290 F.3d at 1048 (*citing In re Pac. Enterprises* and noting that "Risk is a relevant circumstance.").

### c. The Contingent Nature of the Fee and the Financial Burden Carried by the Plaintiffs Justifies the Request

The contingent nature of this representation also supports the requested fee. Plaintiffs' counsel took on this case, and the out-of-pocket costs prosecuting it, with no remuneration and with the understanding that they would be compensated only if they succeeded. Specifically, Plaintiffs' Counsel dedicated 484.8 hours and incurred $ 37,491.38 in costs in bringing this action on behalf of Plaintiffs. (Hawkins Decl., ¶¶40-41, Ex. 1; Bokhour Decl., ¶ 15-17, Ex. B; Falakassa Decl., ¶¶ 18-19, Ex. A). Courts have recognized the need to reward counsel who accept a case on a contingent fee basis because of the risk of non-payment that they face:

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. *See Richard Posner, Economic Analysis of Law* §21.9, at 534-35 (3d ed. 1986). Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless of whether they win or lose.

*In re Washington Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1299, 1300-01 (9th Cir. 1994). The Court should not overlook the real risks that counsel incur by accepting contingent fee cases, such as this one. *See, e.g., Aichele*, 2015 WL 5286028 at *5 (describing Federal Judicial Center report which found that 31.7% or less of the filed class cases in four districts resulted in successful class outcomes for plaintiffs). Large-scale wage and hour actions of this type are, by their very nature, complicated and time-consuming. Any law firm undertaking representation of a large number of class members inevitably must be prepared to

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFF'S MOTION FOR FINAL APPROVAL

make a tremendous investment of time, energy, and resources. Due also to the contingent nature of the customary fee arrangement, lawyers must be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. The demands and risks of this type of litigation overwhelm the resources – and deter participation – of many traditional claimants' firms.  The fact that Plaintiff's counsel accepted this financial burden supports the reasonableness of the requested fee percentage.  *See Vizcaino,* 290 F.3d at 1050 ("These burdens are relevant circumstances") (*citing* Six (6) Mexican Workers, 904 F.2d at 1311; *Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1377 (9th Cir.1993), *Bebchick v. Wash. Metro. Area Transit Comm'n*, 805 F.2d 396, 408 (D.C.Cir.1986)).

### d. Awards Made in Similar Cases

The Ninth Circuit has also found it appropriate to "to examine lawyers' reasonable expectations, which are based on the circumstances of the case and the range of fee awards out of common funds of comparable size" in assessing a fee request. *Vizcaino*, 290 F.3d at 1050.  Thirty-three percent of a common fund is an award well within the range of awards made in similar cases:

> The Ninth Circuit has held that 25% of the gross settlement amount is the benchmark for attorneys' fees awarded under the percentage method, with 20 to 30% as the usual range in common fund cases where the recovery is between $50 and $200 million. Other case law surveys suggest that 50% is the upper limit, with 30-50% commonly being awarded in cases in which the common fund is relatively small. Indeed, California cases in which the common fund is small, tend to award attorneys' fees above the 25% benchmark. More particularly, a review of California cases in other districts reveals that courts usually award attorneys' fees in the 30-40% range in wage and hour class actions that result in recovery of a common fund under $10 million.  Overall, although this [30%] percentage is slightly higher than the 25% benchmark

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFF'S MOTION FOR FINAL APPROVAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

for fees in class action cases, it is consistent with other wage and hour class actions where the recovery is less than $10 million.

*Cicero v. DirecTV, Inc*., EDCV 07-1182, 2010 WL 2991486 (C.D. Cal. July 27, 2010) (citations omitted); *see also Espinosa,* 2018 WL 1705955 at *8 (approving 30% fee); *Beaver v. Tarsadia Hotels*, No. 11-CV-01842-GPC-KSC, 2017 WL 4310707, at *9 (S.D. Cal. Sept. 28, 2017) ("California courts routinely award attorneys' fees of 33.33% of the common fund."); *Wert v. U.S. Bancorp*, No. 13-CV-3130-BAS-AGS, 2017 WL 5167397, at *7 (S.D. Cal. Nov. 7, 2017) ("Awarding 30% of the common fund for attorneys' fees is typical in wage and hour cases."); *Aichele,* 2015 WL 5286028, at *5 ("…[I]n cases under $10 million, the awards more frequently will exceed the 25% benchmark, and indeed go above 30%."); *Smith v. CRST Van Expedited, Inc*., No. 10-CV-1116- IEG WMC, 2013 WL 163293, at *5 (S.D. Cal. Jan. 14, 2013) ("Under the percentage method, California has recognized that most fee awards based on either a lodestar or percentage calculation are 33 percent and has endorsed the federal benchmark of 25 percent."); *Barbosa v. Cargill Meat Sols. Corp.,* 297 F.R.D. 431, 450 (E.D. Cal. 2013) (collecting cases approving 30% or 33% of common fund); *Singer,* 2010 WL 2196104 at *8 (stating that "the request for attorneys' fees in the amount of 33.33% of the common fund falls within the typical range of 20% to 50% awarded in similar cases" and *citing Ingalls v. Hallmark Mktg. Corp.,* 08cv4342 VBF (Ex), Doc. No. 77, ¶ 6 (C.D. Cal. Oct. 16, 2009) (awarding 33.33% fee on a $5.6 million wage and hour class action); *Knight v. Red Door Salons, Inc.,* 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) (finding award of 30% reasonable in wage and hour case); *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1047-48 (N.D. Cal. 2008) (stating that "in most common fund cases" the award is more than 25% and citing cases approving 30%); *Birch v. Office Depot, Inc.,* No. 06cv1690 DMS (WMC), Doc. No. 48, ¶13 (S.D. Cal. Sept. 28, 2007) (awarding 40% fee on a $16

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFF'S MOTION FOR FINAL APPROVAL

million wage and hour class action); *Rippee v. Boston Mkt. Corp.,* No. 05cv1359 BTM (JMA), Doc. No. 70, at 7-8 (S.D. Cal. Oct. 10, 2006) (awarding 40% fee on a $3.75 million wage and hour class action)); and *In re Activision Sec. Litig.,* 723 F. Supp. 1373 (N.D. Cal. 1989) (collecting cases and stating "as documented by the lengthy list of cases below, this court finds that in most recent cases the benchmark is closer to 30%"). Accordingly, the requested fee percentage is well within that approved in similar cases.

### e.  Costs of Litigation are Reasonable

Plaintiff's counsel also requests $37,491.38 from the Gross Settlement Amount as reimbursement for their costs and expenses as provided for under the terms of the Settlement Agreement. (Hawkins Decl., ¶ 41, Ex. 1; Bokhour Decl., ¶ 17). This request is less than the $50,000.00 of costs and expenses preliminarily approved by this Court. The difference will remain part of the Net Settlement Amount to be distributed to Participating Class Members. "There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *In re Heritage Bond Litig*., No. 02-ML-1475 DT, 2005 WL 1594403, at *23 (C.D. Cal. June 10, 2005) (*quoting In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 434 (E.D. Pa. 2001)). Courts have found that expenses are routinely reimbursed in contingency cases in addition to the fee award. *See, e.g., In re Businessland Sec. Litig.,* 1991 WL 427887 at *2 (collecting cases where expenses were awarded in addition to 30-33% of a common fund). The Ninth Circuit and other California courts have explained that plaintiffs' counsel in contingency cases may recover reasonable out-of-pocket expenses "that would normally be charged to a fee paying client." *Hoffman v. Constr. Protective Services, Inc*., EDCV03-01006VAPSGLX, 2006 WL 6105638 at *8 (C.D. Cal. Aug. 31, 2006) (*citing Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir.1994)). The expenses that Plaintiff's counsel seeks here are

of that nature. Plaintiffs' counsel have incurred their expenses without remuneration and accepted the risk that they would never be repaid if the case was not successfully resolved. Moreover, it was clearly communicated to Class Members in the Class Notice that Plaintiff's counsel would request costs not to exceed $50,000.00 to reimburse costs actually incurred. Accordingly, Plaintiffs' request for costs in the amount of $37,491.38 should be granted.

## VI.   THE ENHANCEMENT PAYMENT IS REASONABLE

Class Counsel seeks approval of $15,000.00 Enhancement Award Payments to each of the named Plaintiffs/Class Representatives totaling $60,000.00. The requested enhancement awards are reasonable in light of the general releases of all claims Plaintiffs agreed to, greater than the release given by Class Members, the benefits Plaintiff conferred upon the entire Class resulting in payments to all Class Members, the time spent assisting counsel with the investigation and prosecution of these claims and consenting to the proposed Settlement. Furthermore, in pursuing this action on behalf of the Class, Plaintiffs risked a judgment for attorneys' fees and costs in the event this matter had been lost. (Hawkins Decl., ¶ 42-43; *See also* declarations of Plaintiffs previously submitted in Support of Preliminary Approval, Dkts. 47-4, 47-5, 47-6, 47-7, 47-8).

Courts routinely approve service payments, or incentive awards, to compensate named Plaintiffs for the services they provide and the risks they incur during class litigation. *See In re Cellphone Fee Termination Cases* (2010) 186 Cal. App. 4th 1380, 1393; *see also Bell v. Farmers Ins. Exch.* (2004) 115 Cal. App. 4th 715, 725-26 (upholding service payments to class representatives); Manual § 21.62 n.971 (noting that service payments are warranted). Based on the foregoing, the requested $15,000.00 Enhancement Payment to each named Plaintiff continues to be fair, appropriate, and justified as part of the overall settlement. (*Id.*)

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFF'S MOTION FOR FINAL APPROVAL

## VII.    THE SETTLEMENT ADMINISTRATION COSTS ARE REASONABLE

The Parties agreed to hire ILYM Group Inc., as the administrator, and the Court approved this choice. The Administrator was responsible for formatting, printing and mailing the Notice. It was also responsible for updating addresses and re-mailing Notices returned as undeliverable, responding to Class Member inquiries, answering questions from Counsel for the Parties, and providing a declaration to document its duties and responsibilities under the settlement. Plaintiffs now request that the Court approve the $63,750.00 fee to ILYM Group Inc., for services rendered and to be rendered. (Hernandez Decl., ¶ 15). Following the grant of final approval, the Administrator's duties will continue in order to calculate and mail the Individual Settlement Payment checks to Class Members, perform tax reporting obligations, disburse other payments as ordered by the Court, and perform such other duties as set forth in the Settlement Agreement. The fee of $63,750.00 for services rendered and to be rendered is fair and reasonable and should be granted.

## VIII.   THE SETTLEMENT PENALTIES UNDER PAGA ARE REASONABLE

The PAGA Fund payment of $60,000.00 with 75% to the LWDA ($45,000.00) and 25% to the aggrieved employees ($15,000.00) is reasonable under the circumstances. The Parties negotiated a good faith amount for PAGA penalties.  The PAGA penalties allocation not the result of self-interest at the expense of other Class Members. The LWDA was also provided notice of the Settlement with the concurrently filing of the preliminary approval motion and the instant motion. Plaintiff did not receive a response or objection to the Settlement from the LWDA. Thus, Plaintiffs request the Court finally approve the PAGA allocation in the amount of $60,000.00 with 75% being paid to the LWDA (i.e.

MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFF'S MOTION FOR FINAL APPROVAL

$45,000.00) and the remaining 25% (i.e. $15,000.00) being distributed to the aggrieved employees.

## IX.   CONCLUSION

Based on the foregoing, Class Counsel respectfully requests the Court grant final approval of the Class Action Settlement, award (1) Class Counsels' fees in the sum of $983,333.33 and litigation costs not to exceed $50,000.00; (2) award the Enhancement Payments in the sum of 60,000.00 (i.e. $15,000.00 to each named Plaintiff); (3) award $$63,750.00 to ILYM Group Inc., for settlement administration services, and (4) approve the PAGA Payment of $60,000.00 with a $45,000.00 of that sum paid to the LWDA and the remaining $15,000.00 paid to the Aggrieved Employees.

Respectfully submitted,
**JAMES HAWKINS APLC**
**BOKHOUR LAW GROUP, P.C.**
**FALAKASSA LAW, P.C.**

DATED: November 5, 2024      *By: /s/ Gregory Mauro*_____
James R. Hawkins
Greogry Mauro
Mehrdad Bokhour
Joshua Falakassa

Attorneys for Plaintiffs and the
Settlement Class

## CERTIFICATE OF SERVICE

UNITED STATES DISTRICT COURT )
                                              ) SS
NORTHERN DISTRICT OF CALIFORNIA )

     I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to this action. My business address is: 9880 Research Drive Suite 200, Irvine, CA 92618.

     I hereby certify that on November 5, 2024, I served on the interested parties in this action the following document(s) entitled:

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT AND ATTORNEY FEES AND COSTS**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT AND ATTORNEY FEES AND COSTS**

**DECLARATION OF JOSHUA FALAKASSA IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

**DECLARATION OF JAMES HAWKINS IN SUPPORT OF  MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT AND ATTORNEY FEES AND COSTS**

**DECLARATION OF MEHRDAD BOKHOUR IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

**DECLARATION OF NATHALIE HERNANDEZ OF ILYM GROUP, INC., IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**[PROPOSED] FINAL JUDGMENT AND DISMISSAL WITH PREJUDICE**

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT AND ENTERING JUDGMENT**

[XX]   BY ELECTRONIC SERVICE: Based on a court Order or an agreement by the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent from the email address Alma@jameshawkinsaplc.com to the persons at the e-mail addresses listed in the Service List above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

### **SERVICE LIST**

*(See service list attached)*

SOOTOODEH & ASSOCIATES
Yass McNeil, Esq.
5 Hutton Centre Drive, Suite 860
Santa Ana, CA 92707
Tel: 714-662-2664
ymcneil@sotoodeh.net

**FALAKASSA LAW, P.C.**
Joshua S. Falakassa, Esq. (Bar No. 295045)
*josh@falakassalaw.com*
1901 Avenue of the Stars, Suite 450
Los Angeles, California 90067
Tel: (818) 456-6168; Fax: (888) 505-0868

**BOKHOUR LAW GROUP, P.C.**
Mehrdad Bokhour, Esq. (Bar No. 285256)
*mehrdad@bokhourlaw.com*
1901 Avenue of the Stars, Suite 450
Los Angeles, California 90067
Tel: (310) 975-1493; Fax: (310) 675-0861

<u>**Via LWDA Website Only**</u>
Labor and Workforce Development Agency
Attn: PAGA Administrator
1515 Clay Street, Ste 801
Oakland, CA  94612
http://www.dir.ca.gov/Private-Attorneys-General-Act

[ x ] I electronically filed the foregoing with the Clerk of the Court for the U.S. District Court, for the Northern District of California using the CM/ECF system. All participants are registered CM/ECF users, and will be served by the CM/ECF system.

[XX] (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

[XX]  I declare under penalty of perjury under the laws of the State of California and The United States of America that the above is true and correct.

     Executed on November 5, 2024 at Irvine, California.


                      */s/ Alma Chavarin*
                      ALMA CHAVARIN

---

CERTIFICATE OF SERVICE